*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant*,

*v.*

ROBERT DAMIEN THORNTON,
*Appellee.*

No. 20150029
Filed February 21, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Katie Bernards-Goodman
No. 111900297

Attorneys:

Sean D. Reyes, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen.,
Salt Lake City, for appellant

Debra M. Nelson, Joan C. Watt, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, and JUDGE BEAN
joined.

JUSTICE DURHAM filed a concurring opinion with respect to Part III.B.

Having recused himself, JUSTICE PEARCE does not participate herein;
DISTRICT JUDGE JOSEPH M. BEAN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1   Robert Damien Thornton was convicted of multiple counts of
rape, sodomy, and sexual abuse of a twelve-year-old victim, B.Z. On
appeal Thornton challenged a pair of evidentiary rulings made by
the district court. He argued that the district court erred in admitting
evidence of his past misconduct under Utah Rule of Evidence 404(b)
and in precluding him from questioning the victim about her sexual

history. On the latter point, Thornton argued that he was entitled to present evidence of the victim's sexual experience under Utah Rule of Evidence 412 and the Sixth Amendment of the U.S. Constitution.

¶2    The court of appeals reversed Thornton's conviction. *State v. Thornton*, 2014 UT App 265, 339 P.3d 112. It found error in the admission of evidence of Thornton's past misconduct—of his alleged sale of drugs to B.Z.'s mother and encouragement of B.Z's mother's prostitution. Specifically, the court of appeals held that the district court erred in failing to perform a "scrupulous examination" of the character evidence introduced by the prosecution. *Id.* ¶ 38. For years our cases have used this phrase in describing the district court's role in assessing character evidence under rule 404(b). *See, e.g.*, *State v. Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837; *State v. Lucero*, 2014 UT 15, ¶ 37, 328 P.3d 841. The court of appeals took that requirement to encompass a duty to assess the drug and prostitution evidence *separately*. *Thornton*, 2014 UT App 265, ¶ 40. And because the district court lumped the two sub-classes of character evidence together in its analysis under rule 404(b), the court of appeals found error. It also deemed the error prejudicial.

¶3    We reverse the court of appeals and reinstate the judgment of conviction. We find no error in the district court's evidentiary ruling because we affirm its decision admitting evidence of Thornton's alleged involvement in the drug transactions and prostitution at issue in the case. And we emphasize that the appellate review of evidentiary rulings is on the decision made at trial, not the process by which that decision is reached. In so concluding, however, we acknowledge that our prior decisions leave room for the approach taken by the court of appeals. We accordingly repudiate the language in our prior opinions that speaks of "scrupulous examination" of character evidence under rule 404(b)—finding that such language is more confusing than helpful.

¶4    We also affirm the court of appeals' decision affirming the district court's denial of Thornton's bid to present evidence of the victim's prior sexual history under rule 412 and the Sixth Amendment. We recognize that the Confrontation Clause sometimes entitles a defendant to question a witness about an essential element of his defense. But the defendant failed to lay a foundation for any such argument here. On this record, Thornton cannot show that his interrogation of the victim as to her sexual experience was essential to a foundational element of his defense. And we accordingly

conclude that there was no error in the district court's refusal to allow him to present this evidence to the jury.

## I. BACKGROUND

### A. Facts and Trial Court Proceedings

¶5    Twelve-year-old B.Z. lived with her mother and stepfather in a two-bedroom apartment.[1] After B.Z.'s stepfather was incarcerated her mother began renting out one of the rooms. Thornton became one of the tenants. He moved into the apartment with his girlfriend. The two of them stayed in B.Z.'s bedroom. B.Z. slept in the front room most of the time but would occasionally sleep in her bedroom.

¶6    B.Z.'s mother had long suffered from serious substance-abuse problems. She was addicted to methadone, which she took to deal with chronic pain. To treat that addiction, she went to a methadone clinic each morning.

¶7    Thornton allegedly was a drug dealer. For a time he agreed to provide B.Z.'s mother with crack cocaine in lieu of rent. After a few months, however, Thornton told B.Z.'s mother that she would have to begin paying for the drugs he was giving her. He also allegedly encouraged her to engage in prostitution to make money to pay for the drugs. She did so. She brought clients home and had sex with them in the apartment. B.Z. was aware that her mother was a prostitute and was having sex with various men in the apartment.

¶8    As her mother's addiction intensified, B.Z. was increasingly neglected. She stopped attending school even though she had once been earning "A" grades. And she was often left unfed and without much attention from her mother.

¶9    Thornton's girlfriend was arrested about a month after she and Thornton moved into the household. Thornton began flirting with B.Z. shortly thereafter. He began to touch her in sexually suggestive ways, such as patting her on the buttocks. Eventually, one morning while B.Z.'s mother was at the methadone clinic, Thornton dragged B.Z. into the bedroom and forced her to have sex with him.

¶10  After the first rape, Thornton continued to force himself upon B.Z. He did so each morning while her mother was at the clinic. While at first she fought him off, she eventually surrendered. And

---

[1] The facts as presented here are in the light most favorable to the jury verdict.

she began to develop what she perceived as romantic feelings for him—feelings she expressed in letters. Thornton also gave B.Z. a Christmas present and showered her with affection.

¶11 At first B.Z. did not say anything to her mother about the rape. She felt that her mother was too addicted to drugs to care and too dependent on Thornton to do anything about it. B.Z. also noted that her relationship with her mother had deteriorated as Thornton became increasingly abrasive and hostile toward the mother. Thornton also threatened B.Z. with violence if she revealed what he had done.

¶12 After a couple of months B.Z. finally told her mother that Thornton had been having sex with her. She also declared that she believed she was pregnant with Thornton's child. The mother did not call the police herself because she had an outstanding warrant against her. But she told her neighbor about the rape. The neighbor called the police, who came and arrested both Thornton and B.Z.'s mother.

¶13 B.Z. was taken to a group home and asked about the sexual abuse. At first she denied the abuse. But in a subsequent interview she told the detectives that Thornton had repeatedly raped her.

¶14 By the time B.Z. was examined by medical staff, it was too late to perform a rape test. A pregnancy test revealed that she was not pregnant. And the medical professionals found no physical evidence of rape. Yet B.Z. told investigators that after sex Thornton would wipe himself off on a brown sweater in their room. And forensic testing found evidence of Thornton's semen on the sweater.

¶15 Thornton was charged with multiple counts of rape of a child, sodomy of a child, and aggravated sexual abuse of a child. He was tried three times. The first trial ended in a mistrial. The second resulted in a hung jury. On the third trial the jury finally reached a verdict. It found Thornton guilty on all counts.[2]

¶16 At each of the three trials two evidentiary disputes came to the fore. The first involved the State's attempt to introduce evidence that Thornton had supplied B.Z.'s mother with drugs and had encouraged her involvement in prostitution. At the first trial the parties stipulated to exclude this evidence. But a mistrial ensued

---

[2] Thornton was also convicted of witness-tampering, but he has not appealed this conviction and it is not before us.

when the mother volunteered information about Thornton's role in her prostitution—in response to (permitted) questions about her time as a prostitute. At the second trial the parties entered into the same stipulation. And this time the stipulation was honored—the evidence was not admitted. The result, as noted, was a hung jury.

¶17 Before the third trial, the State moved for admission of this evidence under rule 404(b). The State's basis for admission was that the evidence was relevant to a non-character purpose—to helping the jury understand the circumstances that gave Thornton the opportunity to abuse B.Z., and that discouraged her from coming forward sooner.

¶18 The district court granted the State's motion. It allowed the evidence to be admitted with a limiting instruction. The instruction indicated that the evidence was to be considered only "for the limited purpose of determining Defendant's position of power or trust in the household or in understanding the victim's behavior." *Jury Instruction No. 28.* It also stated that the evidence could not be used to establish Thornton's character or propensity to commit crime. *Id.*

¶19 Thus, the district court concluded that the evidence of Thornton's drug dealing and involvement in B.Z.'s mother's prostitution was essential to provide a relevant narrative. It therefore held that the evidence served a legitimate non-character purpose under rule 404(b). And it also determined that the evidence was relevant and not unduly prejudicial.

¶20 The second category of disputed evidence involved the sexual history of the victim. Around the time of Thornton's sexual acts against B.Z., she was also engaged in a consensual sexual relationship with a fourteen-year-old friend of hers. Thornton sought to question B.Z. about this relationship in order to rebut the assumption that as a twelve-year-old she would be sexually innocent.

¶21 At the start of the first trial, the judge held that B.Z. could not be asked about her sexual history. In so ruling the judge concluded that this evidence was not essential to the defense because "Defendant had several other means by which he can establish that B.Z. had sexual knowledge well beyond that of a traditional twelve-year-old." *Ruling and Order* at 6 (Sept. 14, 2011). With this in mind, the court concluded that introduction of evidence of B.Z.'s sexual history "would do little more than damage [B.Z.'s] integrity among a jury[,] which is the very problem Rule 412 seeks to address." *Id.* at 7.

Opinion of the Court

¶22 B.Z. presented detailed testimony about the rape at trial. She testified that the sex "hurt really bad" and felt like she "was being ripped open." *Trial Transcript* at 28 (Sept. 25, 2012). She remembered that it had "stung really bad" and that she had "white gooey stuff" in her urine. *Id.* After B.Z. testified, the defense asked the court to reconsider its exclusion of the rule 412 evidence. But the trial judge denied that motion.

¶23 This played out similarly in the second and third trials. Thornton renewed his motion for reconsideration and the trial judge again denied it. And B.Z. testified at each trial along the same lines.

¶24 When cross-examining B.Z., the defense asked her about the fact that her mother was a prostitute and asked how she knew about it. But the defense did not ask B.Z. what she might have learned from her mother's descriptions of or involvement in prostitution. Nor did counsel ask the judge to conduct an *in camera* review to show that B.Z.'s familiarity with sex could not have come from her interactions with her mother or her knowledge of her mother's prostitution. And Thornton did not contend—in closing argument or otherwise—that B.Z. was able to describe sex acts because of knowledge gained from her mother.

¶25 In closing argument the State characterized B.Z. as a child in a couple of contexts. It suggested that her youth explained early inconsistencies in her statements to the police or her infatuated love letters. And it asserted that someone of her age would not have known about the semen on the sweater had she not been there to witness it. But the prosecution did not claim that B.Z.'s youth confirmed the truthfulness of her descriptions of sexual sensations. It did not assert, in other words, that a child of her age could not have described sex in the way she did unless she had been raped.

¶26 The jury found Thornton guilty on all counts in the third trial. Thornton then filed an appeal.

B. Appeal

¶27 On appeal Thornton challenged the verdict on the basis of two evidentiary errors at trial—in the admission of evidence of Thornton's bad acts and in the exclusion of evidence of B.Z.'s sexual history. The court of appeals reversed. *State v. Thornton*, 2014 UT App 265 ¶ 34, 339 P.3d 112. It affirmed the decision to exclude the evidence of B.Z.'s sexual history under rule 412, but reversed on the basis of the decision to admit evidence of Thornton's bad acts, which it deemed error under our precedents. *Id.* ¶ 47.

¶28 The district court's error, in the court of appeals' view, was in failing "to perform the exacting review required before Rule 404(b) evidence can be admitted." *Id.* ¶ 34. Thus, the court of appeals acknowledged that the district court's analysis in many respects "reflect[ed] the 'care and precision' our case law requires." *Id.* ¶ 39 (citation omitted). But it nonetheless found the district court's approach deficient. It noted that "the district court took two separate categories of bad acts . . . and analyzed them as a single unit." *Id.* ¶ 40. And it concluded that "[l]umping both types of bad acts into the same analytical bin prevented the district court from accounting" for the distinct potential for prejudice that each had, or from engaging in the "careful[] weigh[ing]" required under our precedent. *Id.* ¶ 41 (second alteration in original) (citation omitted).

¶29 The court of appeals was concerned that the district court had failed to recognize that the "jury's reaction to evidence of drug dealing could be markedly different than its reaction to evidence of a defendant pressuring a drug-addicted woman into prostitution." *Id.* It feared that the prostitution evidence "could also provide a jury with a greater temptation to draw an improper inference about Thornton's propensity to commit the charged sex crimes." *Id.* And if the district court had analyzed the two pieces of evidence separately, the court of appeals thought it "might have determined" that the drug evidence was admissible even if the prostitution evidence was not. *Id.* ¶ 42.

¶30 The court of appeals accordingly concluded that the district court's "analysis failed to clear the analytical bar" that our cases demand. *Id.* ¶ 38. So "[w]ithout opining on the ultimate admissibility of th[e] evidence," it found reversible error. *Id.*

¶31 Despite reversing the district court on the 404(b) evidence, the court of appeals agreed with its analysis on the admissibility of the victim's sexual history. It considered and rejected two bases for admission proffered by the defendant. First, it rejected Thornton's argument that B.Z.'s "pregnancy belief [or] her sexual knowledge constitutes" physical evidence under rule 412(b)(1), *id.* ¶ 21— evidence offered "to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." *Id.* ¶ 19. The court of appeals deemed the 412(b)(1) exception to apply only to "physical evidence." *Id.* ¶ 21. And it thought that Thornton's argument improperly "stretches the language" beyond its permissible meaning. *Id.*

¶32 Second, the court of appeals turned to Thornton's argument that the evidence was admissible under rule 412(b)(3) because its

exclusion "would violate the defendant's constitutional rights." UTAH R. EVID. 412(b)(3). It noted that Thornton claimed that "admission of the evidence was required to vindicate his constitutional rights to conduct reasonable cross-examination and present a complete defense." *Thornton*, 2014 UT App 265, ¶ 22. But it held that this evidence was not essential to Thornton's defense because it was "unlikely that the jury would have viewed [B.Z.] as a 'sexual innocent'" given B.Z.'s "unusual home environment." *Id.* ¶ 28. For these reasons, the court of appeals concluded that this evidence "would have done 'little more than damage [B.Z.'s] integrity'" in the eyes of the jury. *Id.* ¶ 29 (citation omitted). Finally, the court of appeals noted that the State "did not actively exploit the district court's rule 412 ruling" by unduly focusing on B.Z.'s sexual innocence at trial. *Id.* ¶ 32 n.7. So it concluded that "[t]he district court did not abuse its discretion" in excluding this evidence. *Id.* ¶ 30.

¶33 The State filed a petition for certiorari challenging the decision to reverse Thornton's conviction on the basis of the district court's 404(b) analysis. Thornton filed a cross-petition. He sought to challenge the decision to affirm the refusal to allow the admission of evidence of B.Z.'s sexual history under rule 412. We granted the parties' petitions. Our review is *de novo*. In considering the court of appeals' decision, however, we assess whether "it accurately reviewed the trial court's decision under the appropriate standard of review." *State v. Verde*, 2012 UT 60, ¶ 13, 296 P.3d 673 (citation omitted).

¶34 We reverse the court of appeals' decision to reverse Thornton's conviction on the basis of the admission of his prior bad acts under rule 404(b). And we affirm the court of appeals' decision on B.Z.'s sexual history under rule 412. Thus, we reinstate the jury verdict and judgment of conviction on the various counts against Thornton.

## II. EVIDENCE OF THORNTON'S PRIOR MISCONDUCT UNDER RULE 404(b)

¶35 Utah Rule of Evidence 404(b) regulates a sensitive evidentiary matter. On one hand, the rule recognizes the dangers of exposing a jury to evidence of a defendant's acts of prior misconduct—specifically, the risk that the jury will infer "that the defendant has a reprehensible character, that he probably acted in conformity with it, and that he should be punished for his immoral character in any event." *Verde*, 2012 UT 60, ¶ 29. The rule deems that inference impermissible. It holds that "[e]vidence of a crime, wrong, or other

act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." UTAH R. EVID. 404(b)(1).

¶36 On the other hand, the rule also recognizes that acts of prior misconduct may also sustain an alternative—and entirely permissible—inference. "When past misconduct evidence is offered for any other purpose"—other than to "suggest action in conformity with" the bad character suggested by his prior bad acts—such evidence "is admissible" so long as it satisfies rules 402 and 403. *Verde*, 2012 UT 60, ¶ 15. Thus, our rules of evidence recognize that evidence of prior misconduct may be both relevant and not unduly prejudicial. And our rules deem such use of this evidence appropriate.

¶37 "That much is clear" from the terms of rule 404(b). *Verde*, 2012 UT 60, ¶ 16. Yet our cases have long recognized a difficulty embedded in the seemingly simple dichotomy set forth in the rule. "The difficulty . . . springs from the fact that evidence of prior bad acts often will yield dual inferences—and thus betray both a permissible purpose and an improper one." *Id.* This is a difficulty we have long grappled with. For some time we have sought to address it by imposing a set of procedural requirements on our trial judges.

¶38 Specifically, our cases have long spoken of a requirement of "scrupulous examination" of evidence of prior misconduct under rule 404(b). *See State v. Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837. We have said that a judge "must use 'care and precision' in evaluating 'the true—and predominant—purpose' for admission" of evidence of prior misconduct. *State v. Lucero*, 2014 UT 15, ¶ 36, 328 P.3d 841 (quoting *Verde*, 2012 UT 60, ¶¶ 22, 55). And we have required a district judge's analysis of these issues to be set forth on the record, and (at least sometimes) as a product of briefing and oral argument from the parties. *See id.* ¶ 37; *State v. Widdison*, 2001 UT 60, ¶ 44, 28 P.3d 1278.

¶39 Most recently, in *Lucero*, we characterized the "scrupulous examination" requirement as consisting of three steps— encompassing analysis of the standards of admissibility under rules 404(b), 402, and 403. *Lucero*, 2014 UT 15, ¶ 37. In so doing, we "acknowledge[d] that our case law giving effect to the 'scrupulous examination' requirement has, to date, been somewhat unclear." *Id.* To minimize confusion going forward, *Lucero* clarified that "scrupulous examination" requires only that the judge analyze the standards set forth in rules 404(b), 402, and 403 of the Utah Rules of Evidence. We also repudiated the notion of a hard requirement of

briefing and oral argument. We stated instead that it is enough that "the trial court engages in th[e] three . . . step analysis on the record." *Id.* And we emphasized that this requirement is "essential for effective appellate review of the issues." *Id.*

¶40 The court of appeals' decision in this case was premised on the above line of cases. In reversing the district court's decision to admit evidence of Thornton's involvement in B.Z.'s mother's drug use and prostitution, the court of appeals found a lack of *scrupulousness. State v. Thornton*, 2014 UT App 265, ¶ 38, 339 P.3d 112. It concluded, in particular, that the trial judge had fallen short in failing to analyze two sets of prior bad acts separately—Thornton's involvement in drug use, on one hand, and prostitution, on the other. *Id.* ¶ 40. And due to the lack of a *separate analysis* of the admissibility of each category of evidence *on the record*, the court of appeals concluded that it could not determine whether the district judge would have deemed the drug evidence or prostitution evidence admissible if it had analyzed them separately. *Id.* ¶ 42. And it reversed on the ground that the district court's "analysis failed to clear the analytical bar" demanded by our cases. *Id.* ¶ 38.

¶41 We can see a basis for the court of appeals' decision in the terms of our precedents in this area. And we concede that the quality of appellate review would have been enhanced by a more fulsome statement of the district judge's analysis on the record. But we nonetheless reverse the court of appeals. We do so for a number of reasons.

## A. Preservation

¶42 First, Thornton preserved no objection to the method or structure of the district court's analysis of the 404(b) question presented. At no point in the district court proceedings did Thornton ever suggest that the two strands of prior misconduct evidence should be analyzed separately. Nor was this issue presented in the briefing or argument to the court of appeals.

¶43 Thornton argued generally that the district judge's analysis fell short of the "scrupulous examination" required by our cases. But he never challenged that examination on the specific basis seized on by the court of appeals. That is significant. We find no room for reversal of a trial judge under an abuse of discretion standard on a ground that was not specifically presented to the district court. *See State v. King*, 2006 UT 3, ¶ 23, 131 P.3d 202 (trial court does not abuse its discretion when it does not *sua sponte* consider an issue that was not raised before it).

B. Repudiation of "Scrupulous Examination" Standard

¶44 Second, we acknowledge a basis for the court of appeals' decision in the "scrupulous examination" standard set forth in our caselaw. But we conclude, on reflection, that that standard is more confusing than helpful. And we accordingly repudiate it.

¶45 We have, as noted, long alluded to the need for "scrupulous" analysis "on the record." And we have explained that that requirement is necessary to facilitate effective appellate review of trial court decisions under rule 404(b). The court of appeals could understandably view our cases as opening the door to—or even commanding—its insistence on careful, separate analysis of the two strands of prior misconduct evidence proffered by the State at trial. It is certainly true that such detailed analysis would have been *more scrupulous* in some sense of that term.

¶46 Yet we find nothing in the rules of evidence that demands such detailed analysis as a freestanding procedural requirement. And we reiterate, as we have in other recent cases, that it is *our rules* that state the primary law of evidence in the State of Utah.[3] With that in mind, we hold that there is no legal error in a district judge's failure to engage in a separate analysis of distinct strands of prior misconduct evidence presented under rule 404(b). And we reverse the court of appeals' conclusion to the contrary.

¶47 In so holding, we take the point an important step further. On reflection, we conclude that the notion of a requirement of "scrupulous examination" under rule 404(b) is more confusing than helpful. This rule nowhere requires explicit findings or analysis on the face of the record. It simply prescribes standards for admissibility of evidence. That is likewise the thrust of rules 402 and 403, which also govern in this area. These rules provide terms and conditions of admissibility of evidence; they do not prescribe the methods or procedure for the district court's analysis on the record.

¶48 Our cases have sometimes suggested otherwise. In requiring "scrupulous examination" we have spoken to the procedure and mechanisms for analysis of rule 404(b) issues. But that now strikes us

---

[3] *State v. Lucero*, 2014 UT 15, ¶ 32, 328 P.3d 841 (explaining that "courts are bound by the text of [our rules]"); *State v. Cuttler*, 2015 UT 95, ¶ 19, 367 P.3d 981 (noting that "it is not appropriate for a district court to moor its . . . analysis entirely and exclusively" to factors that were not part of the text of the rules).

as a distortion of the rules of evidence—and of the proper process for appellate review.

¶49 American courts have long followed the "writ of error" approach to appellate review. *See* Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule*, 40 VAND. L. REV. 1023, 1026–27 (1987) (discussing the history of this approach). Under this framework, the appellate court does not review the trial record in a search for an idealized paradigm of justice. *Id.* at 1026 (noting that appellate courts do "not . . . test whether the proper party ha[s] won"). We ask only whether the trial court committed a reversible error in resolving a question presented for its determination.[4]

¶50 The question presented to the district court in this case was whether to admit evidence of prior misconduct under rule 404(b). To decide whether there was error in admitting evidence of Thornton's involvement in B.Z.'s mother's drug use and prostitution, the court of appeals should have decided whether that evidence should properly have been excluded under the rules of evidence. In reversing instead on the basis of the district court's failure to perform a sufficiently *scrupulous examination*, the court of appeals assessed only the form or process of the district court's analysis. That is insufficient. In reviewing a decision to admit evidence, there can be error only if the evidence should properly have been excluded.

¶51 This is the general rule in the law. For most decisions reviewed on appeal, the error, if any, is in making an incorrect decision on the operative question presented. A judge may make the right decision for a mistaken reason (or no reason), for example, and still be affirmed on appeal. As a general rule, in other words, our appellate review is of operative decisions made by lower courts, not of the quality of the analysis employed in the course of such decisions.

¶52 There are exceptions to the rule. In a few isolated instances our law requires explicit findings or some other formal mode of analysis on the face of the record—and calls for reversal in the

---

[4] *See Peatross v. Bd. of Comm'rs of Salt Lake Cty.*, 555 P.2d 281, 284 (Utah 1976) ("[A]ppellate jurisdiction is the authority to review the actions or judgments of an inferior tribunal upon the record made in that tribunal, and to affirm, modify[,] or reverse such action or judgment.").

absence of such an approach.[5] But this is the exception that proves the rule. And our rules of evidence show no signs of departing from the general rule. Again, they prescribe only standards for admission or exclusion of evidence and do not generally speak to the form of analysis to be performed on the record in support of a decision on admissibility.

¶53 We acknowledge that our "scrupulous examination" cases have suggested otherwise. For reasons stated herein, however, we hereby repudiate this formulation of the standard to be applied on appellate review of evidentiary decisions made under rule 404(b). Instead of looking for "scrupulous examination," our appellate courts should simply assess whether the district judge made an error *in admitting or excluding the evidence in question*. That is the question presented under our rules of evidence. And appellate review for error should conform to the standard set forth in our rules.

¶54 In so holding we do not at all undermine the advisability of a trial judge's *scrupulousness*. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (noting that "district courts substantially aid the review process by giving thorough explanations of their reasons"). Nor do we suggest that the degree of a judge's scrupulousness—as defined in our cases—is irrelevant to appellate

---

[5] In a bench trial, for example, the court "must find the facts specially and state separately its conclusions of law," and "[t]he findings and conclusions must be made part of the record." UTAH R. CIV. P. 52(a). And the failure to follow this procedural path is itself error, as we have concluded that such failure is a "fundamental defect" that "makes it impossible to review" the lower court's decision. *Acton v. Deliran*, 737 P.2d 996, 998–99 (Utah 1987); *accord* Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, 9C Fed. Prac. & Proc. Civ. § 2577 (3d ed.) (noting that "the court of appeals may vacate the judgment and remand the case to the district court for findings if the trial court has failed to make findings when they are required by the rule"). The requirement of findings extends to criminal bench trials as well. *See* UTAH R. CRIM. P. 12(e) ("Where factual issues are involved in determining a motion, the court shall state its findings on the record."). *But see State v. Helms*, 2002 UT 12, ¶¶ 11–12, 40 P.3d 626 (noting that "as a general rule 'this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings.'" (citations omitted)).

review. The careful trial judge will still proceed as outlined in our recent *Lucero* decision—marching through the standards set forth in rules 404(b), 402, and 403, and presenting his analysis on the record. And the judge who does so will be better-positioned to have his decision on admissibility of prior misconduct evidence affirmed on appeal.[6]

¶55  But the bottom line is that "scrupulous examination" is not an independent requirement of rule 404(b). So we repudiate our caselaw to the extent it has so suggested. And we reverse the court of appeals' decision because it was based on that premise.[7]

C. Analysis of Admissibility Under Rules 404(b), 402, and 403

¶56  That conclusion requires us to answer the question the court of appeals stopped short of addressing—whether the prior

---

[6] The existence of careful findings, after all, will increase the likelihood of deference on appeal. *See Benson v. N. Gopher Enters., Inc.*, 455 N.W.2d 444, 446 (Minn. 1990) (concluding that the "thoroughness of the trial court's exploration of [an] issue" justified deference even though the appellate court "may have reached a different conclusion").

[7] Our holding here is not inconsistent with our decision in *State v. Verde*, 2012 UT 60, 296 P.3d 673. There we reversed a jury verdict that was premised on the admission of evidence presented under rule 404(b). Our reversal was on the ground that the bases for admission proffered by the prosecution at trial did not hold up on appeal. *Id.* ¶ 24. And we declined to consider an alternative ground for admission proffered for the first time on appeal—not preserved at trial and thus not ruled upon by the district court. *See id.* ¶ 20 (refusing to consider the "doctrine of chances" as a basis for admission of 404(b) evidence where this doctrine was not advanced as a basis for admission at trial). Our *Verde* decision was based on the law of preservation. *See id.* ¶ 20 (declining to affirm on the basis of the doctrine of chances "in the absence of any indication in the record that the district court was asked to conduct the careful weighing required to sustain the admission of such evidence in a case like this one," and "leav[ing] it to the district court on remand" to decide whether the doctrine could sustain the admissibility of the evidence in that case). And the law of preservation stands despite our repudiation of the procedural requirement of "scrupulous examination."

misconduct evidence at issue was properly admitted at trial. We conclude that it was. As a threshold matter, we reiterate the deferential standard of review that applies to review of this kind of question. The trial judge is in a better position than we are to assess the avowed basis for evidence of prior misconduct—and to judge its likely effect in prejudicing or confusing the jury. So the question for us is not whether we would have admitted this evidence. It is whether the district judge abused his broad discretion in doing so.

¶57 And we conclude that the district court was well within its discretion in admitting this evidence. First, we find ample grounds for the judge's determination that the evidence was presented for a purpose other than to suggest that the defendant likely acted "in conformity with" bad character. UTAH R. EVID. 404(b)(1) (identifying this as a *prohibited use*). The evidence of Thornton's involvement in B.Z.'s mother's drug use and prostitution presented a narrative of relevance to the prosecution's case—to demonstrating Thornton's position of power in the home, to explaining why he had such easy access to B.Z., and to suggesting why B.Z. may have waited to come forward with accusations against Thornton. This was the avowed purpose of the prior misconduct evidence in this case. And the district court acted within its discretion in crediting this proper purpose. *See Verde*, 2012 UT 60, ¶ 15 (noting that "the admissibility of prior misconduct evidence depends on its avowed purpose"); *id.* ¶ 19 (indicating that a trial judge's "decision to admit evidence under rule 404(b) is entitled to some deference").

¶58 Granted, the prior misconduct evidence in this case could also sustain an improper inference. We cannot foreclose the possibility that the jury may have viewed Thornton's encouragement of prostitution, for example, as an indication that he may be the type of person who might be likely to engage in deviant sexual conduct. But that possibility is not enough to dictate the exclusion of this evidence under rule 404(b). The threshold 404(b) question is whether the evidence has a plausible, avowed purpose beyond the *propensity* purpose that the rule deems improper. If it does then the evidence is presumptively admissible (subject to rule 402 and 403 analysis).

¶59 We have suggested that an avowed proper purpose may be rejected as a pretext or "ruse." *Verde*, 2012 UT 60, ¶ 22. That would be appropriate, for example, where the proper purpose put forward by the prosecution is addressed to an issue that is not actually disputed, and where the court concludes that the only real effect of the evidence is to suggest likely action in conformity with bad character. *See id.* Short of that, however, the court's job under rule 404(b) is not to balance or weigh competing (proper and improper)

inferences.[8] Such weighing comes in under rule 403. *See id.* ¶ 17 (stating that "if 404(b) evidence appears to have a dual purpose—to be aimed at both proper and improper inferences—it may nonetheless be excluded under rule 403").

¶60   In all events, the district court did not view the State's avowed "narrative" purpose of the 404(b) evidence in this case as a pretext or ruse. It deemed the State's non-propensity-based purposes to be legitimate. And we agree.

¶61   That takes us to the questions of relevance and balancing under rules 402 and 403. Relevance is a low bar. "Evidence is relevant if . . . it has *any* tendency to make a fact more or less probable than it would be without the evidence." UTAH R. EVID. 401(a) (emphasis added). And the trial judge was well within her discretion in deciding that the prior misconduct evidence in this case was relevant—that it would help the jury understand Thornton's position of power in the home, why he had such easy access to B.Z., and why B.Z. may have waited to come forward with accusations against him. These were important issues in the case given Thornton's defense—that B.Z. fabricated her accusations against him. So the narrative advanced by the prosecution—which included Thornton's prior misconduct—was certainly relevant.

¶62   Under rule 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." UTAH R. EVID. 403. The trial judge concluded that the probative value of the 404(b) evidence in this case was not substantially outweighed by any of the listed considerations. And we find no abuse of discretion in that determination.

¶63   The risk of prejudice was somewhat mitigated by the fact that Thornton's prior acts were distinct from the crime he was charged with. There was no claim that he made any sexual advances toward B.Z.'s mother, only that he encouraged her to become involved in prostitution to have money to pay for the drugs he was providing to her. And the evidence, again, was a matter of substantial relevance to the prosecution (in rebutting Thornton's charge that B.Z.

---

[8] The district court may also issue a limiting instruction—reminding the jury of the need to avoid the improper, propensity-based inference, and to consider only the proper purpose.

fabricated her testimony). For these reasons the trial judge acted well within her discretion in deciding that the probative value of this evidence was not "substantially outweighed" by the risk of "unfair prejudice."

¶64 We reverse the court of appeals (and uphold the decision of the district court) on these grounds. In so concluding, we note that we find no error in the district judge's failure to consider the prostitution and drug evidence separately. Thornton never asked for the evidence to be considered separately. And it ultimately was of a piece: It told a broader narrative of relevance to the prosecution's rebuttal of Thornton's principal defense (fabrication). For those reasons we think the trial judge acted reasonably in considering and weighing both strands of 404(b) evidence together. We reverse the court of appeals' decision to the contrary.

## III. EVIDENCE OF B.Z.'S SEXUAL EXPERIENCE UNDER RULE 412

¶65 Utah Rule of Evidence 412 generally proscribes the admission of evidence of the "other sexual behavior" of a victim "in a criminal proceeding involving alleged sexual misconduct." UTAH R. EVID. 412(a). It also sets forth a series of exceptions to the general rule. Under part (b)(1) of the rule, "evidence of specific instances of a victim's sexual behavior" is admissible "if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." UTAH R. EVID. 412(b)(1). Alternatively, part (b)(3) states that "evidence whose exclusion would violate the defendant's constitutional rights" is also admissible. UTAH R. EVID. 412(b)(3).

¶66 These two exceptions are implicated here. Thornton claims that evidence of B.Z.'s sexual relationship with a fourteen-year-old friend should have come in under either or both of the cited exceptions. And he challenges the court of appeals' decision affirming the district judge's rejection of his arguments on these points. We affirm.

### A. Rule 412(b)(1)

¶67 Thornton claims that evidence of B.Z.'s sexual experience was "offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." UTAH R. EVID. 412(b)(1). He says that B.Z's sexual relationship with a fourteen-year-old friend was "physical evidence" of relevance to B.Z.'s belief that she was pregnant or to her familiarity with sex acts. And he contends that evidence of this relationship should thus have been admitted under the exception in rule 412(b)(1).

¶68 We disagree. Rule 412(b)(1) comes into play in a case involving a specific forensic question—whether "the defendant was the source of semen, injury, or other physical evidence." *Id.* No such forensic question was presented here. No one ever identified any tangible, physical evidence that could directly tie B.Z.'s assailant to her rape. And the absence of such "physical evidence" renders the rule 412(b)(1) exception inapplicable.

¶69 Thornton suggests that B.Z.'s fourteen-year-old friend might be the "source of semen" that caused her to believe that she was pregnant. But that was never an issue at trial. B.Z. apparently was not pregnant. And the question presented at trial was not who may have caused her to believe that she was. It was whether Thornton perpetrated the sexual assaults charged by B.Z. The sexual relationship between B.Z. and the fourteen-year-old boy had no relevance to that question.

¶70 There was never any question, moreover, as to whether Thornton was the source of any semen, injury, or other physical evidence. So the relationship between B.Z. and the fourteen-year-old boy was not "physical evidence" covered by rule 412(b)(1).

¶71 We affirm the court of appeals on that basis. We agree with its conclusion that the 412(b)(1) exception applies only to "physical evidence," and that it "stretches the language" of the exception too far to apply it here. *State v. Thornton*, 2014 UT App 265, ¶ 21, 339 P.3d 112.

### B. Rule 412(b)(3) and the Sixth Amendment

¶72 That leaves only Thornton's argument that exclusion of evidence of B.Z.'s relationship with her fourteen-year-old friend violated his "constitutional rights" in a manner implicating the exception in rule 412(b)(3). The principal constitutional rights he cites are those protected by the Sixth Amendment to the United States Constitution.

¶73 Thornton says he needed to present evidence of B.Z.'s relationship with the fourteen-year-old boy in order to undermine B.Z.'s testimony—specifically, her testimony describing the physical sensation of sexual penetration and intercourse. Evidence of that relationship, in Thornton's view, would have allowed him to undercut the prosecution's presentation of B.Z. as a sexual innocent who would not have known how to describe the physical sensations that she described unless she had been raped. Because he was precluded from presenting that evidence, moreover, Thornton claims

that he was deprived of a fair trial as guaranteed by the Sixth Amendment.

¶74 The Sixth Amendment guarantees a defendant a right to a "speedy and public trial" by jury, "to be confronted with the witnesses against him," "to have compulsory process for obtaining witnesses in his favor," and "to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. These provisions have been interpreted to encompass some form of "right to present [a] defense." *See Rock v. Arkansas*, 483 U.S. 44, 48, 56 (1987). Thus, where rules of evidence or procedure foreclose any meaningful avenue for presenting a defendant's fundamental defense to charges against him, the U.S. Supreme Court has found a Sixth Amendment violation. And it has deemed the Sixth Amendment to override rules of evidence or procedure.

¶75 In *Rock*, for example, the court struck down an Arkansas rule that excluded all hypnotically refreshed testimony from admission at trial. It did so on the ground that the Arkansas rule deprived the jury of the only witness who was at the scene and had firsthand knowledge of the facts of the case. *See id.* at 57. The court also emphasized that the Arkansas rule infringed the defendant's interest in testifying in her own defense. *See id.* at 52. Thus, the *Rock* court held that the defendant had a right to be allowed "to present his own version of events in his own words," and it struck down the Arkansas prohibition on hypnotically refreshed testimony on the ground that it infringed the defendant's right to present a defense. *Id.* Earlier cases are along similar lines.[9]

¶76 Yet the high court has emphasized the limited nature of the right recognized in this line of cases. In *United States v. Scheffer*, 523

---

[9] *See Washington v. Texas*, 388 U.S. 14, 23 (1967) (striking down, on Sixth Amendment grounds, Texas statutes preventing codefendants or coparticipants in a crime from testifying for one another, precluding the defendant from introducing his accomplice's testimony that the accomplice had committed the crime; holding that "the State arbitrarily denied [the defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed"); *Chambers v. Mississippi*, 410 U.S. 284 (1973) (holding that Mississippi law preventing party from impeaching own witness and excluding testimony of three persons to whom witness had confessed violated defendant's constitutional rights).

U.S. 303 (1998), the court explained that the Sixth Amendment right to present a defense is far from absolute. The *Scheffer* court held that this right must be understood to accommodate the "broad latitude" given to "rulemakers" tasked with "establish[ing] rules excluding evidence from criminal trials." *Id.* at 308; *see also Rock*, 483 U.S. at 55 (explaining that the defendant's interest in presenting evidence may "bow to accommodate other legitimate interests in the criminal trial process"). In recognition of this prerogative, *Scheffer* held that the "defendant's right to present relevant evidence is . . . subject to reasonable restrictions." 523 U.S. at 308. Specifically, *Scheffer* established that evidentiary "rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Rock*, 483 U.S. at 56). And it explained that "exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.*

¶77 This is a high bar. It is met only if the defense can show that the operative rule of evidence "significantly undermined fundamental elements of the defendant's defense." *Id.* at 315. Thus, it is not enough to show that "a state or federal rule excludes favorable evidence." *Id.* at 316. The defense must demonstrate a "weighty interest" that is "significantly undermined" by the rule of evidence; and the rule must be shown to be "arbitrary" or "disproportionate to the purposes" it is designed to serve. *Id.* at 308, 315.

¶78 These standards are not completely theorized or explained in *Scheffer* or *Rock*. But they require, at a minimum, proof that the evidence in question is essential to the presentation of a defense. *See id.* at 315 (requiring proof that exclusion "significantly undermined fundamental elements of the defendant's defense"). *Scheffer* suggests that it is only in such circumstances that the state's interest in enforcing its rules of evidence is "disproportionate" to the "weighty interest of the accused." *Id.* at 308.

¶79 Thornton cannot make such a showing. He failed to lay the foundation necessary to do so in the trial proceedings below. And the absence of such foundation renders him incapable of establishing on appeal that the evidence of B.Z.'s sexual relationship with a fourteen-year-old was fundamental or essential to his defense.

¶80 The district court based its decision to exclude the evidence of B.Z.'s sexual experience on the determination that Thornton had "several other means by which he can establish that B.Z. had sexual knowledge well beyond that of a traditional twelve-year-old." *Ruling and Order* at 6 (Sept. 14 2011). Thus, because it found that "defendant

can make the same allegations with different evidence," the district court ruled that "he is not denied his Sixth Amendment rights." *Id.*

¶81 Thornton challenges that ruling on appeal. He claims that the other evidence available to him—principally the evidence of B.Z.'s experience with the sexual activity and prostitution taking place in her household—was insufficient to allow him to establish B.Z.'s familiarity with the physical sensations of sexual activity. But he failed to lay the foundation necessary to support that argument in the district court. Thornton never sought an *in camera* examination to compare the knowledge B.Z. had from what she learned from the sexual activity in her household with the understanding she acquired from her relationship with the fourteen-year-old. Nor did he pursue any such line of questioning in his examination of B.Z. at trial—to ask, for example, whether she had heard her mother describe sex in the kind of detail that she used to describe what it felt like to be raped.[10]

¶82 That is fatal to Thornton's position on appeal. Without a foundation in the record for comparison of the rule 412 evidence with the alternative evidence cited by the district court, Thornton has no basis for challenging the district court's determination that he had "other means" to establish B.Z.'s "sexual knowledge." And for that reason he likewise has no basis for establishing that evidence of B.Z.'s sexual experience was essential to his defense.

¶83 We affirm the court of appeals' decision on the rule 412(b)(3) exception on this basis.

## IV. CONCLUSION

¶84 We affirm the court of appeals' decision on the rule 412 issue but reverse its decision to reverse Thornton's conviction on the rule 404(b) issue. Thus, absent any basis for questioning the guilty

---

[10] For these reasons we are in no position to opine on the question whether Thornton "met the threshold for creating a Sixth Amendment Claim," or in other words whether "the trial court erred in its conclusion that the other evidence of sources for the victim's sexual knowledge were adequate to meet that claim." *Infra* ¶ 2 (Durham, J., concurring). Because Thornton "leaves us only with his speculation" about what information the victim could have gleaned from either source of information, *infra* ¶ 3, we have no basis for evaluating the correctness of the district court's assessment of the relative value of the two available sources of evidence.

verdict, we reinstate the judgment of conviction on each of the several counts against Mr. Thornton.

———————

JUSTICE DURHAM, concurring separately:

¶85  I concur in the result, and in all parts of the majority opinion except the analysis under rule 412 of the Utah Rules of Evidence contained in Part III.B. I do not disagree with the opinion's explanation of the content and standards for review of evidentiary concerns implicating the Sixth Amendment. I do disagree with the trial court's and the majority's assessment of the evidence in this case. The trial court, as the majority notes, concluded that the defendant could "make the same allegations [that the victim's testimony about sexual details was the result of her relationship with a boyfriend and not the defendant's attacks] with different evidence." *Supra* ¶ 80.

¶86 The "different evidence" in question, according to the majority, is "principally the evidence of [the victim's] experience with the sexual activity and prostitution taking place in her household." *Supra* ¶ 81. But the type of testimony at issue here bears no logical nexus to second-hand exposure to sexual activity or prostitution. It contained explicit, personal descriptions of physical sensations, pain, and cloudy substance in her urine. There is no likelihood, in my view, that any of that testimony came from observations of, or conversations about, the consensual adult sexual activities going on in the household. It is also unfortunate that the prosecutor referred to the victim on several occasions in connection with this issue as a "child," in an apparent effort to emphasize her sexual inexperience. Thus, I think the defense met the threshold for creating a Sixth Amendment claim, and that the court of appeals erred in affirming the trial court's conclusion that the other evidence of sources for the victim's sexual knowledge were adequate to meet that claim.

¶87  That being said, however, I agree with the majority opinion that the defense entirely failed to show "that the operative rule of evidence 'significantly undermined fundamental elements of the defendant's defense.'" *Supra* ¶ 77 (citation omitted). In failing to ask for an *in camera* proceeding and in failing to create a record permitting comparison of the rule 412 evidence and the other evidence anticipated at trial, the defendant leaves us only with his speculation that the victim's sexual experiences with another child would shed any light on the content and veracity of her testimony.

We have only unconfirmed assertions about the nature of that experience, and it was up to the defendant to rectify that situation. Thus I conclude that in light of the trial court's concerns about the harm to the victim in the admission of the testimony, it was not a violation of defendant's rights and was within the court's discretion to exclude it.

_____