**2018 UT App 159**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PHILLIP VIRGILE BARNEY,
Appellant.

Opinion
No. 20160620-CA
Filed August 23, 2018

Seventh District Court, Price Department
The Honorable George M. Harmond
No. 151700227

Don M. Torgerson, Attorney for Appellant

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1 Phillip Virgile Barney held Victim hostage overnight in a pickup truck on a lonely country road, beating Victim and holding a knife to her throat in the process. During the ordeal, Barney told Victim that he intended to continue to torture her and eventually kill her. Based on this incident, a jury convicted Barney of aggravated kidnapping, aggravated assault, and violation of a protective order. Barney claims his convictions should be reversed because the trial court allowed evidence of other acts of abuse that Barney had perpetrated against Victim. We reject Barney's claims and affirm.

BACKGROUND

¶2    Victim walked alone one evening searching for her teenage daughter. Despite an active protective order barring contact, Barney approached Victim in his truck and offered a ride to her daughter's location. Although Victim and Barney had been arguing earlier that day, Victim got into his truck.

¶3    As soon as Victim got in, Barney grabbed her hair and slammed her head against the center console, pinning her neck under his forearm. Barney sped away, punching and kneeing Victim in the face while threatening to kill her. He then drove until the truck ran out of gas on a rural country road.

¶4    Stranded there, Barney pulled out a large knife and held it to Victim's throat. Barney threatened to torture and kill Victim, saying he would force a stone down her throat to choke her, and that when she was almost dead he would slit her throat and fill her body with rocks. At one point, Barney gave the knife to Victim and told her to kill herself, which she considered doing. Barney eventually fell asleep, but Victim remained in the truck with him until morning.

¶5    After sunrise, Barney left to find gas. He found a local rancher, who brought gas to the stranded truck. Victim did not speak with the rancher or flee while Barney was gone. Barney then brought Victim home. Victim did not report this incident (the Kidnapping Incident) to the police until roughly two months later.

¶6    The State charged Barney for the Kidnapping Incident. Before trial, the State moved to admit evidence of other acts of abuse that Barney had committed against Victim. Those acts included (1) a prior incident where, because Victim refused to get in his truck, Barney drove his truck at a high speed toward Victim, narrowly missing her (the Vehicular Assault Incident); (2) a prior incident where Barney, upset that Victim was not

responding to his attempts to contact her, found Victim babysitting at a friend's house, pushed his way into the home, and pinned her by the neck against a wall with his forearm while she was holding a child (the Strangulation Incident); (3) a prior incident where Barney sent letters to Victim while he was in jail, violating a protective order (the Protective Order Incident); and (4) an incident that occurred after the Kidnapping Incident, but before the Kidnapping Incident was reported, where Barney began speeding with Victim in the truck, grabbing her by the head, and when he refused to stop, Victim tried to jump out of the truck only to have Barney pull her back in (the Moving Vehicle Incident). The trial court initially excluded all of this evidence, but it did not foreclose the admission of the evidence on rebuttal "if [Victim is] challenged or if there's evidence that she should have done something and didn't."

¶7 During trial, Barney's defense counsel questioned Victim about why she did not try to escape and why she waited so long to report the Kidnapping Incident to the police. To rebut those concerns, the State again moved to admit the other-acts evidence. The trial court admitted the Vehicular Assault, Strangulation, and Protective Order Incidents for the noncharacter purpose of explaining Victim's state of mind: her fear of Barney. The trial court also allowed evidence of the Moving Vehicle Incident to show Barney's "modus operandi," and Victim's "reaction and her fear."

¶8 A jury convicted Barney of aggravated kidnapping, aggravated assault, and violation of a protective order. Barney appeals, challenging the trial court's decision to allow the other-acts evidence.

ISSUE AND STANDARD OF REVIEW

¶9 Barney contends that the trial court erred in admitting the four instances of other-acts evidence. Challenges to a trial court's

ruling on 404(b) evidence are reviewed for abuse of discretion. *State v. Thornton*, 2017 UT 9, ¶ 56, 391 P.3d 1016. That is, appellate courts "simply assess whether the district judge made an error in admitting or excluding the evidence in question." *Id.* ¶ 53 (emphasis omitted). "[A]ppellate review of evidentiary rulings is on the decision made at trial, not the process by which that decision is reached." *Id.* ¶ 3.

## ANALYSIS

¶10    Barney contends that the trial court erred in admitting evidence of the Vehicular Assault, Strangulation, Protective Order, and Moving Vehicle Incidents. Specifically, Barney argues that the other-acts evidence was not admitted for an appropriate noncharacter purpose, the evidence was not relevant, and the evidence was prejudicial. We disagree on all points.

¶11    Rule 404(b) of the Utah Rules of Evidence sets forth the standards governing a trial court's decision to admit or exclude evidence of crimes, wrongs, or other acts. The rule prohibits the use of this evidence "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). Evidence of crimes, wrongs, or other acts is admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). As stated, in reviewing a trial court's ruling on 404(b) evidence, appellate courts "simply assess whether the district judge made an error in admitting or excluding the evidence in question." *State v. Thornton*, 2017 UT 9, ¶ 53, 391 P.3d 1016 (emphasis omitted).

¶12    We first address Barney's argument that there is no plausible, avowed purpose for the evidence beyond showing his propensity for bad behavior. Second, we examine whether the

evidence was relevant. Third, we analyze whether the evidence was prejudicial.

## I. Plausible, Avowed Noncharacter Purpose

¶13   "The threshold 404(b) question is whether the evidence has a plausible, avowed purpose beyond the propensity purpose that the rule deems improper." *State v. Thornton*, 2017 UT 9, ¶ 58, 391 P.3d 1016 (emphasis omitted). A trial court might conclude that the offered noncharacter purpose is a ruse. "Short of that, however, the court's job under rule 404(b) is not to balance or weigh competing (proper and improper) inferences." *Id.* ¶ 59.[1] Here, the trial court concluded that the other-acts evidence had been offered for a proper purpose. Specifically, the trial court allowed evidence of the Vehicular Assault, Strangulation, and Protective Order Incidents for the noncharacter purpose of explaining Victim's state of mind—her fear of Barney. The trial court allowed evidence of the Moving Vehicle Incident to show Barney's "modus operandi" and Victim's "reaction and her fear." In this context, fear is synonymous with Victim's state of mind, a proper noncharacter purpose.

¶14   Our supreme court has clearly held that other-acts evidence showing a victim's state of mind can qualify as a

---

1. Earlier decisions from the Utah Supreme Court required that, in situations where other-acts evidence sustains both proper and improper inferences, courts "should balance [proper and improper inferences] against each other under rule 403, excluding the bad acts evidence if its tendency to sustain a proper inference is outweighed by its propensity for an improper inference or for jury confusion about its real purpose." *See State v. Verde*, 2012 UT 60, ¶ 18, 296 P.3d 673, *abrogated by State v. Thornton*, 2017 UT 9, 391 P.3d 1016. Thus, our supreme court in *Thornton* altered its previous directive.

noncharacter purpose. *See State v. Bates*, 784 P.2d 1126, 1127 (Utah 1989) (explaining that evidence was admissible where it was "elicited to describe the state of mind of the victim" to explain why the victim "was afraid of defendant" and thus "did not report the incidents sooner"); *see also State v. Harter*, 2007 UT App 5, ¶ 28, 155 P.3d 116 (citing *Bates* and holding that the victim's "state of mind—her fear of Defendant" was a "proper, noncharacter purpose"). Recently, our supreme court held in a child sex abuse case that rule 404(b) evidence was admissible where the evidence "presented a narrative of relevance to the prosecution's case—to demonstrating [a defendant's] position of power in the home, to explaining why he had such easy access to [a victim], and to suggesting why [a victim] may have waited to come forward with accusations against [the defendant]." *Thornton*, 2017 UT 9, ¶ 57.

¶15    These holdings support the purpose for which the 404(b) evidence was admitted in this case—to show Victim's state of mind as to why she did not try to escape or quickly report the Kidnapping Incident. After the trial court initially excluded the other-acts evidence, Barney's counsel raised doubts about Victim's allegations by highlighting her reluctance to escape and her delay in reporting the Kidnapping Incident to the police. The Vehicular Assault Incident demonstrates an instance where Victim tried to resist Barney's attempt to convince her to ride in his truck and was met with escalated violence, explaining why Victim was unwilling to resist the Kidnapping Incident. The Strangulation Incident helps reveal why Victim would not want to run from or avoid Barney because avoiding him in the past had resulted in him violently attacking her. The Protective Order Incident helps show why Victim waited to report the Kidnapping Incident because Barney had previously ignored protective intervention. The Moving Vehicle Incident illustrates Barney's continued violence toward Victim, explaining why she was afraid to report the Kidnapping Incident right away. Thus, as in *Bates*, *Harter*, and *Thornton*, the other-acts evidence

plausibly goes to the avowed noncharacter purpose of explaining Victim's state of mind and why she acted the way she did.

¶16 We therefore conclude that the Vehicular Assault, Strangulation, Protective Order, and Moving Vehicle Incidents were admitted for an appropriate noncharacter purpose.[2] Specifically, we conclude that the other-acts evidence was

---

2. Barney takes issue with the fact that the Moving Vehicle Incident occurred after the Kidnapping Incident for which he was charged. It is true that rule 404(b) evidence is often described as evidence of "prior acts." *See, e.g., State v. Lopez*, 2018 UT 5, ¶ 38, 417 P.3d 116 ("We recognize an exception to that rule where prior acts are relevant, offered for a genuine, noncharacter purpose, and not unduly prejudicial." (cleaned up)). Rule 404(b) itself, however, makes no reference to "prior" crimes, wrongs, or acts, but refers only to "other" crimes, wrongs, or acts. Utah R. Evid. 404(b). Many courts have recognized that other crimes, wrongs, or acts can be relevant, even if those acts occurred after the charged conduct. *See United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995) (noting that the principles governing rule 404(b) other-acts evidence "are the same whether the conduct occurs before or after the offense charged" (cleaned up)); *see also Ashe v. Jones*, No. 98-1324, 2000 WL 263342, at *5 (6th Cir. Feb. 29, 2000); *United States v. Morsley*, 64 F.3d 907, 911 (4th Cir. 1995); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991); *Michigan v. Dreyer*, 442 N.W.2d 764, 765 (Mich. Ct. App. 1989); *Washington v. Brown*, 940 P.2d 546, 576 (Wash. 1997) (en banc); *Washington v. Stuivenga*, No. 52024-5-I, 2005 WL 487551, at *1 (Wash. Ct. App. Feb. 22, 2005) (per curiam). Here, the Moving Vehicle Incident occurred before Victim reported the Kidnapping Incident and was relevant to explain why Victim waited so long to report the crime.

properly admitted for the purpose of showing Victim's state of mind.[3]

## II. Relevance

¶17   Having determined that the other-acts evidence was admitted for a proper noncharacter purpose, we now examine Barney's challenge to the relevance of that evidence. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Utah R. Evid. 401. "Irrelevant evidence is not admissible." *Id.* R. 402. "The standard for determining the relevancy of the evidence is very low, and even evidence with the slightest probative value is relevant." *State v. Smedley*, 2003 UT App 79, ¶ 15, 67 P.3d 1005 (cleaned up).

¶18   The Vehicular Assault, Strangulation, Protective Order, and Moving Vehicle Incidents were relevant to show Victim's state of mind and why she did not flee when she had the chance or report the incident immediately. Barney's defense counsel questioned Victim on why she did not run, why she did not try to get help, and why she did not immediately report the incident. Thus, Barney brought Victim's conduct during and after the kidnapping under scrutiny. Victim answered those questions by responding that she believed something bad would happen if she tried to escape or if she reported the kidnapping. Because these four instances of other-acts tend to make it more probable that she believed something bad would happen if she

---

3. Because we conclude that the evidence was properly admitted for the purpose of showing Victim's state of mind, we do not analyze the court's decision to allow the Moving Vehicle Incident for the purpose of showing Barney's modus operandi. *See State v. Holbert*, 2002 UT App 426, ¶ 34 n.5, 61 P.3d 291.

tried to escape or if she reported the crime, the evidence is relevant.

¶19    We thus see no abuse of discretion in the trial court's conclusion that the other-acts evidence is relevant.

### III. Prejudice

¶20    Finally, we examine Barney's contention that the other-acts evidence was unduly prejudicial under rule 403 of the Utah Rules of Evidence.[4] That rule states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. "Unfair prejudice results only where the evidence has an undue tendency to suggest decision upon an improper basis." *State v. Miranda*, 2017 UT App 203, ¶ 38, 407 P.3d 1033 (cleaned up).

¶21    Evidence of the Vehicular Assault, Strangulation, Protective Order, and Moving Vehicle Incidents was highly probative of Victim's state of mind and ultimately her motivation for not running from Barney or immediately reporting the Kidnapping Incident. The jury may well have questioned Victim's apparent hesitance to escape or her delay in

---

4. Appellant argues in his brief: "Although strict application of [the *Shickles*] factors is no longer required under *Verde* and *Thornton*, they are useful to ensure that the unfair prejudice does not outweigh the probative value of prior-bad-act evidence." Tethering the analysis as Barney suggests may be error. Recently our supreme court stated: "It is always error . . . for a court to center its analysis on the *Shickles* factors, to consider itself obligated to use a particular factor or factors, or to rely inflexibly upon each *Shickles* factor." *State v. Ring*, 2018 UT 19, ¶ 23.

reporting the crime. Because her fear of Barney was the primary reason for her delay in reporting, the other-acts evidence carried high probative value. To be sure, the presentation of the other-acts evidence carries with it some prejudicial effect. However, the danger that the evidence of these other acts would unfairly prejudice Barney was ultimately mitigated by other factors.

¶22    First, the Vehicle Assault, Strangulation, and Protective Order Incidents were "distinct from the crime he was charged with," mitigating any risk of prejudice. *See State v. Thornton*, 2017 UT 9, ¶ 63, 391 P.3d 1016. The similarity between charged conduct and the Moving Vehicle Incident potentially increases the danger of the jury conflating the incidents; however, the protracted nature of the charged conduct—where Barney held Victim for an entire evening while stranded on a rural road—is ultimately distinct enough that any danger of confusion over what evidence applied to what incident is minimal.

¶23    Second, the acts for which Defendant was charged—driving erratically while holding Victim's head against the center console and punching and kneeing her in the face, driving Victim to a remote area where the truck ran out of gas and threatening her with a knife, promising painful and violent death for several hours—were more egregious than the other-acts evidence, and thus the jury would not likely improperly base its decision on a desire to punish Defendant for the uncharged conduct. *See State v. Reece*, 2015 UT 45, ¶ 71, 349 P.3d 712 (explaining that the conduct that a defendant confessed to was more severe than the other-acts evidence admitted at trial, which weighed against concluding that the defendant was unduly prejudiced).[5]

---

5. The court in *Reece* examined undue prejudice under the standard of "overmastering hostility," *see State v. Reece*, 2015 UT

(continued…)

¶24   Third, the trial court provided a limiting instruction prohibiting the jury from convicting Barney based on the other-acts evidence. This instruction further mitigated the risk of any unfair prejudice. *See State v. Trujillo*, 2017 UT App 116, ¶ 22, 400 P.3d 1213.

¶25   Under these circumstances, we conclude that the trial court was well within its discretion in deciding that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice.

CONCLUSION

¶26   The trial court did not err in admitting the other-acts evidence. The evidence was admitted for a proper noncharacter purpose, was relevant, and was not unduly prejudicial.

¶27   Affirmed.

_____

(…continued)
45, ¶ 71, 349 P.3d 712, which has since been renounced by the Utah Supreme Court, *see State v. Cuttler*, 2015 UT 95, ¶ 20, 367 P.3d 981. We rely on *Reece* to demonstrate only that the severity of the charged conduct, weighed against the severity of the other-acts evidence, is an appropriate consideration when analyzing undue prejudice under rule 403. We do not rely on the "overmastering hostility" standard applied in *Reece*.